# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PIERRE CIDONE,** | : | **CIVIL NO. 1:CV-07-01889** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| v. | : | |
| | : | |
| **C.O. BLUME,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Pierre Cidone ("Cidone"), an inmate currently incarcerated at the United States Penitentiary at Hazelton in Bruceton Mills, West Virginia, commenced this action *pro se* by filing a civil rights complaint pursuant to the provisions of 42 U.S.C. § 1983. (Doc. 1.) Cidone names the following Defendants, all of whom were employed at Cidone's former place of confinement, the Lackawanna County Prison ("LCP") in Scranton, Pennsylvania: Correctional Officer Blume; Correctional Officer Sedlack; Correctional Care Services; and Captain Kazinetz. In the complaint, Plaintiff asserts that Defendants Blume and Sedlack used excessive force upon him during an altercation in violation of the Eighth Amendment, and Defendants Kazinetz and Correctional Care Services failed to respond to his grievances and treat his injuries, respectively.[1]

---

[1] In his complaint, Cidone asserts a single allegation against Captain Kazinetz: "Cpt. Kazinetz got my grievances, did not correct it." (Doc. 1 at 2.) In the instant motion for summary

Before the court is a motion for summary judgment, filed on behalf of Defendants. (Doc. 73.) For the reasons set forth below, the motion for summary judgment will be denied as to Defendants Blume, Sedlack, and Correctional Care Services, and will be granted as to Defendant Kazinetz.[2]

I. **Background**

In addressing the instant motion, the court first will set forth the relevant facts and procedural history. In setting forth the relevant facts, the court will note any factual disputes between the parties by presenting both parties' contentions.[3]

---

judgment, Defendants claim that there is no evidence that Captain Kazinetz was personally involved in the September 22, 2007 incident, and thus he is not liable under § 1983 and summary judgment should be granted in his favor. (Doc. 76.) It appears that Cidone is not claiming that Captain Kazinetz was present for the incident in the cell on September 22, 2007, but rather that Captain Kazinetz failed to respond to his grievances related to the incident. Nevertheless, Cidone's claim that Captain Kazinetz failed to respond to his grievances fails because it is well-established that an inmate is not entitled to a favorable response, or indeed any response, from government officials, as the Constitution does not require a prison grievance system. *See Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977) (Burger, J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); *Wilson v. Horn*, 971 F. Supp. 943, 946 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998). As a result, summary judgment will be granted in favor of Defendant Captain Kazinetz.

[2] *See supra* note 1, at 1-2.

[3] In support of their motion for summary judgment, Defendants have submitted a statement of material facts. (Doc. 78.) Cidone did not submit a separate counter-statement of material facts as required by Middle District of Pennsylvania Local Rule 56.1. However, attached to his brief in opposition to the instant motion is a document entitled, "Brief in Support of Plaintiff's Motion in Opposition to Defendants' Motion to Dismiss." (Doc. 83-1.) This "brief" sets forth in twenty-two numbered paragraphs factual averments, presumably in response to Defendants' statement of material facts. For purposes of disposition of the instant motion, the court will construe this document as Cidone's counter-statement of material facts.

A.    **Facts**

On September 22, 2007,[4] Officer Blume and Correctional Officer Talutto performed a search of Cidone's cell.[5]  (Doc. 78 ¶ 5; Doc. 83-1 ¶ 2.)  At some point, Officer Sedlack replaced Officer Talutto in the cell.  (Doc. 83-1 ¶ 3.)  During the search, contraband prescription medications were found in the cell.  (Doc. 78 ¶ 5, Doc. 83-1 ¶ 6.)  When Officers Blume and Sedlack questioned Cidone about the contraband, Cidone attempted to force his way out of the cell, pushing and punching them in the process.  (*Id*.)  While the Officers attempted to gain control of Cidone, he struck both of them, punching one in the face and kicking another in the head.[6]  (*Id*.)

---

[4] Defendants note in their statement of material facts that Cidone failed to cite any date for the alleged incident in his complaint.  (Doc. 78 ¶ 3; *see also* Doc. 1.)  However, Defendants have attached the following exhibits in support of their assertion that the incident in question took place on September 22, 2007: 1) Commonwealth of Pennsylvania Report on Extraordinary Circumstances, 2) Lackawanna Prison Incident Reports, 3) Lackawanna County Misconduct Report, 4) Disciplinary Hearing Board Report, and 5) Medical Records of Cidone from Correctional Care, Inc.  (Doc. 75-3.)  In his brief in opposition to the motion for summary judgment, construed by the court as a counter-statement of material facts, *see supra*, note 1, Cidone references the September 22, 2007 date.  (Doc. 83-1 at 1.)  As it appears the parties agree on the September 22, 2007 date, the court will accept Defendants' supporting documents as exhibits in support of the motion for summary judgment.

[5] In his counter statement of facts, Cidone asserts that during the search, Officer Blume threw his legal paperwork on the cell's floor and made racial slurs directed at him.  (Doc. 83-1 ¶ 5.)  He also asserts that the Officers removed his mattress.  (*Id*. ¶ 7-9.)  Cidone makes no claims with respect to these allegations in his complaint.

[6] A report of extraordinary occurrence was filed with respect to the incident, and recounts the following facts:

During a routine shakedown of our RHU, several pills and other unauthorized

Cidone provides a different account of the cell search. (Doc. 83-1.) He counters that during the search Officer Blume pushed him against the cell wall "with his hand closed into a fist" and struck Cidone in the face, causing an injury. (Doc. 83-1 ¶ 10.) Officer Sedlack then grabbed his legs, causing him to fall forward onto the floor. (*Id.* ¶ 11.) At that time Cidone yelled, "He's not resisting!" but Officer Sedlack placed him in handcuffs and held him down while Officer Blume kicked Cidone in the face. (*Id.* ¶ 12.) While he was kicking Cidone, Officer Blume asked, "Are you fucking done fucking around?" and Cidone responded, "Why are you kicking me in the face?" (*Id.* ¶ 13.) Officer Blume then stated, "You can file a lawsuit against me like your buddy inmate Williams did and inmate Williams' lawsuit didn't make it far in court." (*Id.* ¶ 14.)

The parties agree that after the search a Code Blue was called into the Delta T-7 Unit and several Officers and other staff members responded. (Doc. 78 ¶ 6; Doc. 83-1 ¶ 15.) Defendants assert that Cidone was subdued and handcuffed at

---

items were found hidden in Inmate Pierre Cidone's property. While being questioned about these articles, Inmate Cidone attempted to force his way out of the cell. Inmate Cidone proceeded to push and punch an Officer in his attempts to flee the area. In an attempt to gain control of Inmate Cidone, two Officers were struck by him (one was kneed in the head by Inmate Cidone and the other was punched in the face by Inmate Cidone). A code blue had been called and responding Officers assisted in restraining Inmate Cidone. Inmate Cidone was then checked by our medical staff, as were the two Officers that he struck and all are reportedly fine.

(Doc. 75 at 1-2.)

that time and then taken to a camera cell and placed on a behavioral watch. (Doc. 78 ¶ 6.) Two nurses from LCP's Medical Department examined both Officers and determined they were both "okay." (Doc. 83-1 ¶ 16; Doc. 83-1 at 6, Misconduct Report, Page 2.) In addition, Cidone was examined by a nurse, who noted in an incident report the following: "Evaluated [Cidone's] [small] cuts to lower lip. No sutures needed." (Doc. 75 at 5.) Cidone counters that the nurses examined him and found wounds to his mouth area, a black eye, and a nose injury.[7] (Doc. 83-1 ¶ 17.) There is nothing in the record indicating that medical treatment was performed for a black eye or a nose injury to Cidone.[8]

Further, both Officers Blume and Sedlack filed misconduct reports relating to the incident.[9] In his report, Officer Blume recounted the following facts:

---

[7] Cidone asserts that on September 25, 2007, the attorney representing him in this district in a criminal matter before the Honorable A. Richard Caputo, visited him at LCP, and upon seeing Cidone, asked, "What happened to your face?" (Doc. 83-1 ¶ 18.) Cidone states that he informed the attorney of the assault by the two Officers and the attorney informed Judge Caputo of the assault at Cidone's "criminal court hearing." (*Id.* ¶ 19.) Cidone provides no date for this hearing, and a search of the electronic docket in Cidone's criminal matter before Judge Caputo reveals that there were several court proceedings in his case that took place after the September 22, 2007, ranging from a suppression hearing to a plea hearing. *See United States v. Cidone*, Crim. No. 3:06-CR-00061 (M.D. Pa. Feb. 14, 2006) (Caputo, J.)

[8] In their exhibits attached to their motion for summary judgment, Defendants attach LCP's medical records of Cidone from September 2007 through June 2008. (Doc. 75 at 10-24.) These records make no mention of treatment for any injuries resulting from the September 2007 incident; rather, they reference unrelated incidents of a tooth extraction, a toe injury, and a hunger strike. (*Id.*)

[9] While portions of these reports are located in several entries on the docket, full versions have been attached to Cidone's complaint. (Doc. 1-2 at 9-11.) As such, the court will cite this

5

> While searching T-7 on a tip, several pills were found hidden in Mr. Cidone's property. Also found hidden in a mattress was a radio and headphones. The brown mattress was removed to Delta control area to do a more detailed search. At this time C.O. Talutto had to leave T-7 and C.O. Sedlack entered T-7 to assist in the completion of the cell search. It was at this time C.O. Sedlack unwrapped several pieces of toilet tissue that were used to hide approx. 13 pills. Sgt. Masci and nurses were called to Delta to identify the medication. At this time Mr. Cidone tried to push his way out of T-7. When C.O. Blume told him to go in, Cidone pushed C.O. Blume, then punched, hitting me (C.O. Blume) in the cheek. Inmate was put on the ground after a brief scuffle which resulted in C.O. Sedlack being kicked in the head. Inmate was forced into compliance using an open hand strike to stop him from punching or kicking C.O.s Blume and Sedlack. A "Code Blue" was called and inmate was placed in G-6, checked by the nursing staff for a wound to his mouth/lip area. C.O.s Blume and Sedlack were checked by Medical. Both are O.K.

(Doc. 1-2 at 9, 11.) Officer Sedlack offered the following account in his misconduct report:

> At app. 14:35 hrs, during cell search of Delta T-7 a numbers of pills were found in property. At this point inmate was informed pills would be taken to medical and report written. At this time Officer Blume asked I/M to lock up. It was at this point he refused, saying he did not have his mattress. He was told it has to be searched and would be returned later. Officer again asked I/M to lock up. It was then I/M Cidone pushed Officer Blume. Officer Blume then informed I/M to keep his hands to himself. At that being said, I/M Cidone took a swing at Officer Blume, hitting him in face. At this point I, Officer Sedlack, went for I/M legs while Officer Blume had inmate against wall still resisting. Code Blue was called. Officers responded. Officer Sedlack was kicked on R side of head and punched . . . . Inmate taken down. Cuffed. Medical called.

---

entry only.

(*Id*. at 10.)

### B.     **Procedural History**

Cidone initiated this action on October 16, 2007.  (Doc. 1.)  Along with the complaint, Cidone also filed a motion for leave to proceed *in forma pauperis*.  (Doc. 4.)  On November 26, 2007, the court granted Cidone's motion for leave to proceed *in forma pauperis* and directed service of the complaint on the Defendants named therein.  (Doc. 10.)

On December 27, 2007, summons with respect to all Defendants were returned executed.  (*See* Doc. 12.)  After a lengthy period of time of inaction or delay by the parties,[10] Defendants filed a motion for summary judgment, seeking dismissal of Cidone's complaint on the basis that he failed to exhaust his administrative remedies related to his claims prior to filing this action.  (*See* Docs. 37-39.)  In a memorandum and order dated November 9, 2009, the court denied the motion for summary judgment based on Defendants' failure to submit any evidence in support of their affirmative defense that Cidone failed to exhaust his administrative remedies.  (*See* Doc. 45.)  The court also directed Defendants to file a response to Cidone's previously-filed motion to compel

---

[10] The rather lengthy procedural history of this case prior to the filing of the instant motion for summary judgment is set forth in the court's memorandum and order dated November 9, 2009, and need not be repeated here.  (*See* Doc. 45.)

7

discovery.  (*See id.*)  That response was sent to Cidone, notably untimely, on December 15, 2009.  (*See* Doc. 54.)

On July 7, 2010, the court issued a scheduling order directing that discovery be completed by August 6, 2010; dispositive motions and supporting briefs be filed by September 7, 2010; and indicating that if no dispositive motions are filed by that date, the case will be listed on the next available trial list following the dispositive motions deadline.  (Doc. 70.)  After receiving an extension of time to file a dispositive motion, (*see* Doc. 72), Defendants filed the instant motion for summary judgment on September 21, 2010, (Doc. 73.)  Cidone has filed a brief in opposition.  (Doc. 83.)  Thus, this matter is ripe for disposition.

## II. **Standard of Review**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).  A factual dispute is "material" if it might affect the outcome of the suit under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving

party. *Id*. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

Further, in deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Id*. at 255.

### III.   Discussion

Defendants seek summary judgment on the grounds that: (1) Cidone has failed to state an Eighth Amendment claim for excessive use of force by a prison official, and (2) Cidone has failed to state a claim of improper or inadequate medical care.  The court will discuss each in turn.

####    A.   Eighth Amendment Excessive Use of Force

The use of excessive force against prisoners may constitute cruel and unusual punishment.  *Hudson v. McMillian*, 503 U.S. 1, 5 (1992).  Even though a plaintiff need not allege a serious injury to state a claim, the Eighth Amendment does not protect against reasonable uses of force.  *Id.* at 7, 9-10.  "[T]here is no constitutional violation for '*de minimus* uses of physical force, provided that the

use of force is not of a sort repugnant to the conscience of mankind.'" *Brooks v. Kyler*, 204 F.3d 102, 107 (3d Cir. 2000) (quoting *Hudson*, 503 U.S. at 9-10). The "use of wanton, unnecessary force resulting in severe pain," however, is actionable. *Id*. at 109. Stated otherwise, a prisoner may proceed to trial on an excessive force claim in the absence of serious injury when the record "will support a reliable inference of wantonness in the infliction of pain." *Brooks*, 204 F.3d at 108 (citing *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

In an excessive force claim, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In evaluating a claim of excessive use of force, the court must take several factors into consideration, such as:

> (1) 'the need for the application of force;' (2) 'the relationship between the need and the amount of force that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a forceful response.'

*Brooks v. Kyler*, 204 F.3d at 106 (quoting *Whitley*, 475 U.S. at 321).

In this case, Cidone alleges that Defendants Blume and Sedlack used excessive force when, after they entered his cell to perform a search, Officer Blume punched him in the face with a closed fist and Officer Sedlack knocked him to the

ground, holding him there while Officer Blume kicked him needlessly in the head. Cidone asserts that he sustained cuts to his lips, a black eye, and a nose injury as a result of Defendants Blume and Sedlack's assault. In response, Defendants assert that they did not assault Cidone, but rather, used reasonable and necessary force in response to a disturbance initiated by Cidone. However, they make no mention of, or response to, Cidone's allegations of kicking to his face or eye and nose injuries. Accepting Cidone's allegations as true, and drawing all reasonable inferences in favor of Cidone, the court concludes that Cidone has established that there is a genuine issue of material fact as to whether Defendants Blume and Sedlack's application of force was applied in an attempt to restore discipline, or instead was maliciously and sadistically applied to cause Cidone pain. *See Hudson*, 503 U.S. at 7. Because the court cannot determine the credibility of either party's statements at this stage of the litigation, in order to resolve that issue of fact, Defendants' motion for summary judgment will be denied as to Cidone's excessive force claim. *See Anderson*, 477 U.S. at 249, 255.

    **B.**    **Inadequate Medical Care**

Defendants also seek summary judgment on the basis that Cidone failed to establish that they were deliberately indifferent to his serious medical needs. As

such, the court will examine Cidone's Eight Amendment claim to determine whether summary judgment in favor of Defendants is warranted.

To demonstrate a *prima facie* case of Eighth Amendment cruel and unusual punishment based on the denial of medical care, a plaintiff must establish that the defendant acted with "deliberate indifference to [plaintiff's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). There are two components to this standard: Initially, a plaintiff must make an "objective" showing that the deprivation was "sufficiently serious," or that the result of the defendant's denial was sufficiently serious. Additionally, the plaintiff must make a "subjective" showing that the defendant acted with "a sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). A finding of deliberate indifference must be based on what an official actually knew, rather than what a reasonable person should have known. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001) (discussing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

A medical need is serious if it has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the need for medical attention. *Taylor v. Plousis*, 101 F. Supp. 2d 255

(D.N.J. 2000) *(citing Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir. 1987)). Further, where denial or delay of care causes an inmate to suffer a life-long handicap or permanent loss, the medical need will obviously be considered serious. *See Monmouth County Corr. Institutional Inmates,* 834 F.2d at 347. However, short of such situations, each claim must be evaluated to determine whether the treatment or lack thereof implicates the "broad and idealistic concepts of dignity, civilized standards, humanity and decency" that provide the underpinnings for defining the reaches of the Eighth, or in this case, the Fourteenth Amendments. *Estelle*, 429 U.S. at 102.

When an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988). Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Lanzaro*, 834 F.2d at 346. Only flagrantly egregious acts or omissions can violate the standard. Medical negligence alone cannot result in an Eighth Amendment violation, nor can any disagreements over the professional judgment of a health care provider. *White*, 897 F.2d at 108-10. *See also Estelle*, 429 U.S. at 105-06 (medical malpractice is insufficient basis upon which to establish an Eighth Amendment violation); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) ("It is

well-settled that claims of negligence and medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'"); *Lanzaro*, 834 F.2d at 346 (mere allegations of malpractice do not raise issues of constitutional import).

In the instant case, Cidone does not allege that Defendant Correctional Care Services' refusal to treat his injuries caused him a life-long handicap or a permanent loss. Instead, Cidone simply alleges that they "did not treat my wounds," (Doc. 1 at 2), specifically, a cut on his lip, a black eye, and a nose injury, (Doc. 83-1 ¶ 17). Standing alone, the court cannot say that these injuries constitute a serious medical need. *See Banks v. Beard*, Civ. No. 2:03-CV-659, 2006 WL 2192015, at *13 (W.D. Pa. Aug. 1, 2006) ("Injuries such as cuts, scrapes, scratches, bruises and a swollen black eye simply do not in themselves reflect trauma that necessarily calls for immediate medical treatment from a physician."). However, Cidone's allegations with respect to medical treatment following the September 22, 2007 incident are intertwined with his excessive force claim. As a result, whether the lack of immediate medical treatment following the incident violated the Eighth Amendment will be considered as part of Cidone's excessive force claim. To that end, Defendants argue that "there is no evidence that [Cidone] sustained any injury or required any medical treatment as a result of the September

22, 2007 incident." (Doc. 76 at 4.) To the contrary, the record contains a nurse's incident report from September 22, 2007, that notes blood to the mouth of Cidone, but with no mention of a black eye or injury to his nose. (*See* Doc. 75 at 5.) Further, Defendants have attached Cidone's medical records as of September 24, 2007, but there is nothing in the record to indicate what, if any, treatment Cidone received on September 22, 2007, for *all* the alleged injuries, including those to his lip, eye, and nose. (Doc. 75 at 11-13.) Moreover, as Defendants did not reply to Cidone's response to the instant motion, they have not answered Cidone's allegations with respect to their failure to treat *all* of his injuries. Without a record or reply, if the finder of fact were to credit Cidone's version of the incident, it would be free to conclude that Cidone was subjected to the wanton and unnecessary infliction of pain when he was denied immediate medical treatment for *all* of the injuries he sustained during the incident. Thus, Defendants' motion for summary judgment will be denied as to Cidone's Eighth Amendment claim relating to denial of medical treatment.

**IV.     Conclusion**

For the reasons set forth above, the motion for summary judgment will be denied as to Defendants Blume, Sedlack, and Correctional Care Services. The motion for summary judgment will be granted as to Defendant Kazinetz.

An appropriate order will issue.

s/Sylvia H. Rambo<br>United States District Judge

Dated:  June 16, 2011.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PIERRE CIDONE,** | : | CIVIL NO. 1:CV-07-01889 |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **C.O. BLUME,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |

**O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The motion for summary judgment (Doc. 73) as to Defendants Blume, Sedlack, and Correctional Care Services, is **DENIED**.

2) The motion for summary judgment (Doc. 73) as to Defendant Kazinetz is **GRANTED**.

3) Entry of judgment as to Defendant Kazinetz is **DEFERRED** pending further order of court.

2) The court will issue a separate scheduling order setting forth the case management deadlines for the balance of this case.

                                                      s/Sylvia H. Rambo
                                                      United States District Judge

Dated: June 16, 2011.